UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-22937-Civ-TORRES

Consent Case

MYSTIQUE, INC.,

       Plaintiff,

vs.

138 INTERNATIONAL, INC.,

       Defendant.

_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW;
<u>FINAL JUDGMENT</u>**

This is an action arising under the Lanham Act, 15 U.S.C. §1125(a), which was tried before the Court at a bench trial, as agreed to by the parties, on March 9, 2009. At trial the Court received documentary and testimonial evidence. The evidence by the opposing parties was at times contradictory, requiring the Court to make credibility determinations. Based on the testimonial and documentary evidence presented, and under a preponderance of the evidence standard, the Court makes the following findings of fact. To the extent that any findings of fact constitute conclusions of law, they are hereby adopted as such; to the extent that any conclusions of law constitute findings of fact, they are also so adopted.

## I. FINDINGS OF FACT

1. On February 12, 2009, the Court entered an Order granting Plaintiff, Mystique, Inc.'s Motion for Partial Summary Judgment ("Summary Judgment Order"). [D.E. 73]. The Court found that there were no genuine issues of fact precluding summary judgment as to Count I of the Complaint, which sought Cancellation of Defendant, 138 International, Inc.'s, federal trademark registration for "Mystique" (U.S. Reg. No. 2,609,745 dated August 20, 2002), pursuant to 15 U.S.C. § 1064.

2. In that Summary Judgment Order, the Court found that there were no genuine issues of material fact in the record as to the following:

    a. Yamin Levy, President of Mystique, Inc., created the name MYSTIQUE for ladies fashion sandals and shoes in January 1999.

    b. As early as January 2000, Mystique, Inc. imported, sold and distributed ladies shoes bearing the MYSTIQUE mark in the United States, and as early as October 2000, Mystique, Inc. distributed its MYSTIQUE sandals in Florida, including the Southern District.

    c. On November 1, 2001, Defendant, 138, filed a U.S. application to register the mark "Mystique" for women's footwear, namely sandals, slippers, shoes and sneakers.

    d. Although Defendant's trademark application indicates a date of first use of June 1, 2000, Defendant's own documents reflect that Defendant never used its "Mystique" mark on its shoes as of June 1, 2000. Specifically, Defendant's

correspondence with its factory in China established that an intended first use of the "Mystique" mark was to be in late 2000.

  e. Further, although Defendant provided documents that purpoted to show a shipment of shoes from the factory in early 2001, Defendant sells several different brands of shoes and nowhere do those documents identify that the shipment contained "Mystique" brand shoes.

  f. For the period of time of June 1, 2000, Defendant did not provide any documentary evidence that it in fact ever used "Mystique" as a brand or mark for shoes, other than in correspondence with its overseas factory, which correspondence also failed to show anything to the contrary

  g. Defendant proffered no evidence of advertisement or promotion anywhere during the year 2000 evidencing the use of the "Mystique" mark, and the record on summary judgment showed that Defendant's "Mystique" shoes did not appear in any of its catalogues prior to Fall 2001.

  h. In June 2006, the Trademark Examiner of the United States Patent & Trademark Office refused registration of Plaintiff Mystique, Inc.'s MYSTIQUE mark based on Defendant's prior existing registration.

  i. There was no issue of fact to rebut the fact that Defendant's registration was almost three years after Mystique, Inc.'s creation of its MYSTIQUE mark and two years after Mystique, Inc. had begun selling its MYSTIQUE line of shoes in commerce.

  j. The Court concluded based on the summary judgment record that Defendant appropriated a mark that is identical to Plaintiff's MYSTIQUE mark. The

Court also found that there was no genuine issue of fact that Mystique, Inc. engaged in widespread sales of its MYSTIQUE brand shoes as early as January 2000, and that by the time Defendant began using "Mystique" in Fall 2001, almost two years later, Mystique, Inc. had sold and distributed its MYSTIQUE shoes throughout the United States and in this District. Thus, Mystique, Inc. had clearly acquired all trademark and trade identity rights in its MYSTIQUE mark prior to Defendant's first use.

      k.      The Court also determined that, as a matter of law, there was a likelihood of confusion based on the summary judgment record. Specifically, the Court evaluated the seven factors set forth in the Eleventh Circuit and concluded that Defendant had adopted a mark that was the same or confusingly similar to Plaintiff's MYSTIQUE mark such that consumers were likely to be confused.

      l.      Based on the foregoing undisputed and incontrovertible facts, the Court concluded on summary judgment that Defendant's registration should be cancelled under 15 U.S.C. § 1064.

      3.      Based on the foregoing findings and conclusions, on February 13, 2009, Mystique, Inc. moved to clarify the Court's Summary Judgment Order, seeking entry of a further judgment in its favor as to Count II for false designation of origin/trademark infringement under 15 U.S.C. § 1125(a).

      4.      On March 4, 2009, the Court granted Mystique, Inc.'s Motion for Clarification [D.E. 83]. And on the day of trial, and after considering the cases that were presented and additional argument of the parties, the Court ruled that based on these preceding undisputed facts and, in particular, the findings that Plaintiff has prior rights to its MYSTIQUE mark and that Defendant had adopted a mark that is

the same or confusingly similar to Plaintiff's mark such that consumers were likely to be confused, summary judgment should also have been entered in favor of Plaintiff as to Count II.

5.  With summary judgment having been entered in favor of Plaintiff as to Count I for cancellation of Defendant's registration and Count II for false designation of origin/trademark infringement, a trial was conducted solely on the issue of damages to Plaintiff, including entitlement to attorneys' fees.

6.  Defendant's President and sole shareholder, Mike Chen, testified that of Defendant's 1000 or so customers in the United States, about 70% purchase Defendant's "Mystique" shoes. Defendant's recordkeeping practices are such that Defendant is not able to produce any records reflecting its sales of "Mystique" shoes or its costs relating thereto.

7.  Mr. Chen was able to provide detailed testimony, however, concerning Defendant's total company gross sales as well as the amount of gross sales of "Mystique" shoes. According to Mr. Chen, in 2002, Defendant's total gross sales were $5 million, of which "Mystique" sales comprised 20-30%, or between $1.0 and $1.5 million. The Court found such testimony credible and reliable.

8.  In 2003, Defendant's total gross sales were $4 million, of which Defendant's "Mystique" sales comprised approximately 30%, or $1.2 million.

9.  In 2004, Defendant's total gross sales were $3 million, of which Defendant's "Mystique" sales comprised approximately 30%, or $900,000.

10. In 2005, Defendant's gross sales of "Mystique" shoes was approximately $1 million.

11. In 2006, Defendant's total gross sales were more than $2 million, of which Defendant's "Mystique" sales were between $800,000 and $900,000.

12. In 2007, Defendant's total gross sales were $2 million, of which Defendant's "Mystique" sales comprised between 30-40%, or between $600,000 and $800,000.

13. In 2008, Defendant's total gross sales were $1.7 million, of which Defendant's "Mystique" sales comprised between 30-40%, or between $510,000 and $680,000.

14. The average wholesale price of Defendant's "Mystique" sandals is between $7.50 and $9.00, and for Defendant's "Mystique" ladies boots is $15.

15. Purchase invoices reflecting Defendant's purchases of "Mystique" shoes from its factory in China reflect that in 2002, Defendant paid, in many cases, as little as $2.00 to $4.00 for each pair of "Mystique" shoes.

16. Other than brief testimony concerning the prices Defendant paid to its factory in China for certain sandals, Defendant did not present any substantial evidence concerning its costs.

17. Contrary to what Defendant represented in its trademark application, Defendant has never used the "Mystique" mark to identify sneakers. Defendant first became aware of Plaintiff, Mystique, Inc., in 2005 when Mr. Chen learned that Mystique, Inc. had filed its own trademark application for MYSTIQUE.

18. Despite learning of Mystique, Inc. in 2005, Defendant has continued and is continuing to use the "Mystique" mark on shoes.

19. In support of Defendant's laches defense, Defendant did not present any evidence at trial concerning when Plaintiff learned about Defendant or Defendant's use of "Mystique." Accordingly, Defendant did not present any evidence that Plaintiff inexcusably delayed in enforcing its trademark rights or that Defendant sustained any undue prejudice.

20. Plaintiff and Defendant are competitors in a similar market and relevant geographic area. They both distribute women's sandals with the imprinted name "Mystique" on them, in substantially similar styles, and they both sell these same goods in women's shoe market. They are not direct competitors, however, as they appeal to only similar, but not the same, customers.

21. "Mystique" is an arbitrary mark because the plain meaning for the term "mystique" has no apparent association with ladies footwear.

22. By the time Defendant first used the mark in Fall 2001, Plaintiff had been importing, selling and distributing its MYSTIQUE shoes in the United States for a year and 10 months, and in the Southern District for a full year.

22. As of February 2000, Plaintiff sold its sandals to famous upscale retailers such as Anthropologie, Nordstrom, Neiman Marcus, Saks Fifth Ave. and Dillard's throughout the country.

23. Moreover, as early as January 2001, Plaintiff's MYSTIQUE sandals were featured routinely and repeatedly in various internationally distributed periodicals, including Cosmopolitan, People, Vogue, Glamour, Elle, Allure, Self, Oprah, Us and InStyle.

24. The parties also attended the same trade shows, as evidenced by Mr. Chen's acknowledgement that patrons at trade shows mistook his "Mystique" for Plaintiff's MYSTIQUE brand, and both parties sell wholesale shoes to retailers.

25. In light of Plaintiff's widespread use of MYSTIQUE in advertising and sales throughout the United States at least a year and 10 months before Defendant's first use, plus Defendant's back-dating its first use to June 2000 in its U.S. trademark application, the Court concludes that Defendant knew about Plaintiff's prior use of MYSTIQUE at the time it adopted "Mystique" for its shoes.

26. Defendant, therefore, intentionally infringed on Plaintiff's mark. Indeed, even after Defendant concedes it learned of Plaintiff's MYSTIQUE mark in 2005, Defendant continued to sell its "Mystique" brand shoes rather than recognizing Plaintiff's prior use rights. Defendant also conceded that it was apprised of examples of actual customer confusion in 2007, yet continued to sell its infringing products.

27. The Court finds that, although there is evidence to justify a finding of willful infringement, this is not an exceptional case under 15 U.S.C. § 1117.

## II.   *CONCLUSIONS OF LAW*

Based on the legal authority and analysis set forth in detail in the Court's Summary Judgment Order, Defendant's federal trademark registration for "Mystique" (U.S. Reg. No. 2,609,745 dated August 20, 2002) is hereby cancelled pursuant to 15 U.S.C. § 1064.

Pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, the Court will direct the Director of the United States Trademark Office to cancel U.S. Reg. No. 2,609,745 and to rectify the register with respect to such registration.

Based on the Court's findings as to Plaintiff, Mystique, Inc.'s priority of use of the mark and the likelihood of confusion caused by Defendant's use of "Mystique," Defendant is liable for false designation of origin/trademark infringement pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125. *See Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188 (11th Cir. 2001); *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,* 106 F.3d 355, 360 (11th Cir.1997) (citing *Conagra Inc. v. Singleton,* 743 F.2d 1508, 1512 (11th Cir.1984), *modified,* 122 F.3d 1379 (1997)).

Defendant has raised the defense of laches. In order to prove laches, a defendant "must show the plaintiff inexcusably delayed in enforcing its trademark rights, thereby causing the defendant undue prejudice." *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.,* 522 F.3d 1200, 1207 (11th Cir. 2008) (citing *Citibank, N.A. v. Citibanc Group, Inc.,* 724 F.2d 1540, 1546 (11th Cir. 1984)). Defendant, however, did not present any evidence at trial concerning when Plaintiff learned about Defendant or Defendant's use of "Mystique." Accordingly, Defendant did not present any evidence that Plaintiff "inexcusably delayed" in enforcing its trademark rights or that Defendant sustained "undue prejudice." Therefore, Defendant failed to establish the equitable defense of laches.

Under 15 U.S.C. § 1117, when a violation under section 43(a) has been established, the plaintiff shall be entitled, subject to the principles of equity, to recover

(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. The court in exceptional cases may also award reasonable attorneys' fees to the prevailing party.

In *Burger King Corp. v. Mason,* 855 F.2d 779 (11th Cir. 1988), the Court fully set forth the damages available in a case like this:

> The damage provision of the Lanham Act entitles a trademark holder to recover, among other things, the profits earned by a defendant from infringement of the mark….The Act confers upon the district court a wide scope of discretion to determine the proper relief due an injured party…(citation omitted).
> . . . .
>
> [T]he law in this Circuit is well settled that a plaintiff need not demonstrate actual damage to obtain an award reflecting an infringer's profits under § 35 of the Lanham Act. . . . An accounting for profits has been determined by this Court to further the congressional purpose by making infringement unprofitable, and is justified because it deprives the defendant of unjust enrichment and provides a deterrent to similar activity in the future. . . .
>
> Nor is an award of profits based on either unjust enrichment or deterrence dependent upon a higher showing of culpability on the part of defendant, who is purposely using the trademark.

*Id.* at 780-781 (citations omitted); *accord Nutrivida, Inc. v. Immuno Vital, Inc.,* 46 F. Supp. 2d 1310, 1315-16 (S.D. Fla. 1998).

An award of defendant's profits is appropriate even in cases where, as here, Plaintiff's mark is unregistered and liability is predicated upon Section 43(a) of the Lanham Act. *See id.* And "Lanham Act damages may be awarded even when they are

not susceptible to precise calculations." *Aronowitz v. Health-Chem Corp.,* 513 F.3d 1229, 1241 (11th Cir. 2008). Indeed, a defendant's testimony, alone, provides a sufficient evidentiary basis for the court to assess its profits. *See, e.g., Louis Vuitton S.A. v. Spencer Handbags Corp.,* 765 F.2d 966 (2d Cir. 1985) (holding that court's reliance "on the Rands' statements . . . for proof of the amount of damages" was proper, citing *Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Manufacturing, Inc.,* 597 F.2d 71, 75-76 (5th Cir.1979)).

The parties here are competitors. They are not direct competitors in the identical shoe market, but they are competitors generally in the women's shoe market. In the Summary Judgment Order, the Court found, when analyzing likelihood of confusion, and, in particular, similarity of the goods the marks represent, that the parties both distribute ladies sandals with the imprinted name "Mystique" on them, in substantially similar styles, and that the two goods sell to similar markets and appeal to similar customers. No distinction has been made between the sandals that both companies produce other than the quality of the materials. (See also Summary Judgment Order at 10: "Principals of both parties testified at their depositions that there were instances in which their brand was confused for their competitor."). Indeed, Defendant, by pleading in its counterclaim counts for federal and common law unfair competition, in effect has conceded that it is a competitor of Plaintiff.

Based upon the weight of the evidence presented in the case, the Court concludes that Defendant adopted "Mystique" for its shoes with knowledge of Plaintiff, Mystique, Inc.'s, prior use. As the Court found in its Summary Judgment Order, "Mystique" is

an arbitrary mark because the plain meaning for the term "mystique" has no apparent association with ladies footwear. In addition, by the time Defendant first used the mark in Fall 2001, Plaintiff had been importing, selling and distributing its MYSTIQUE shoes in the United States for a year and 10 months, and in the Southern District for a full year. As of February 2000, Plaintiff sold its sandals to famous upscale retailers such as Anthropologie, Nordstrom, Neiman Marcus, Saks Fifth Ave. and Dillard's throughout the country.

Moreover, as early as January 2001, Plaintiff's MYSTIQUE sandals were featured routinely and repeatedly in various internationally distributed periodicals, including Cosmopolitan, People, Vogue, Glamour, Elle, Allure, Self, Oprah, Us and InStyle. The parties also attended the same trade shows, as evidenced by Mr. Chen's acknowledgement that patrons at trade shows mistook his "Mystique" for Plaintiff's MYSTIQUE brand, and both parties sell wholesale shoes to retailers.

Finally, as stated above and in the Summary Judgment Order, while Defendant never used "Mystique" on its shoes until as late as Fall 2001, Defendant represented in its trademark application filed in November 2001 that its first use of the mark occurred in June 2000, over a year earlier. It is highly unlikely, given the fact that the mark is arbitrary for shoes, that two parties would independently create the same arbitrary mark for their shoes within a 2-3 year period. In light of Plaintiff's widespread use of MYSTIQUE in advertising and sales throughout the United States at least a year and 10 months before Defendant's first use, plus Defendant's back-dating its first use to June 2000 in its U.S. trademark application, the Court

concludes that Defendant knew about Plaintiff's prior use of MYSTIQUE at the time it adopted "Mystique" for its shoes.

Therefore, there is credible evidence in the record, which the Court relies upon, that Defendant intentionally infringed on Plaintiff's mark. Indeed, even after Defendant concedes it learned of Plaintiff's MYSTIQUE mark in 2005, Defendant continued to sell its "Mystique" brand shoes rather than recognizing Plaintiff's prior use rights.

In this case, Plaintiff has not sought recovery of any actual damages. Plaintiff instead seeks an award based on disgorgement of Defendant's profits. The record in this case supports an award of lost profits given the Court's finding that the infringement in this case was willful, either from the inception of Defendant's use of its "Mystique" mark, or at least as of the time that it was alerted to customer confusion in 2007. At that point, customers who attended a trade show where Defendant's products were being showcased were requesting to see Plaintiff's shoes, which Defendant obviously could not provide. Even assuming that Defendant did not initially believe that it was marketing to similar customers at the time that it began using the mark, it knew that customers were in fact being actually confused by that point. Yet Defendant did not cease its infringing activity at that point and chose to ignore the problem.

Accordingly, the Court finds that an award of lost profits is justified given the record evidence of willful infringement in this case. *See, e.g., Babbit Elec., Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1182 (11th Cir. 1994). Where a defendant's

infringement is deliberate and willful an accounting for profits is proper under a theory of unjust enrichment. *Id.* (citing *Maltina Corp. v. Cawy Bottling Co. Inc.,* 613 F.2d 582, 585 (5th Cir. 1980)). "This accounting serves to deter future infringement, and is thus appropriate even where the plaintiff is not in direct competition with the defendant." *Id.*

By this standard, the Court agrees that a lost profits award in this case is proper. Defendant's infringing shoes are admittedly targeting a less expensive category of women's shoes, but they are still in a very similar market that caused damage to and actual confusion with Plaintiff's more expensive shoe products. Profits generated from that infringing activity should not be retained by the infringing party, especially where that infringing activity was knowing and deliberate.

On the other hand, the evidence supporting a lost profits calculation in this case is slim. Plaintiff relies entirely on Mr. Chen's memory at trial as to the total amount of sales that Defendant had during relevant years, and the rough percentage that "Mystique" brand shoes contributed to those sales. From this, Plaintiff seeks an award of $5,910,000, which was calculated by adding Defendant's the lowest estimated annual sales from 2002 through 2008.

The evidence at trial supports Plaintiff's gross calculation, as per 15 U.S.C. § 1117. Clearly, under that statute, "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." The record here, albeit roughly and without much documentary support, satisfies this prima facie requirement under the statute. The burden then shifted to

Defendant to counter that evidence with proof of costs and appropriate reductions to minimize the actual amount of profits generated by sales of the infringing product.

In this case, either due to poor accounting on Defendant's part, or most likely due to the litigation cost incurred by this Defendant in defending its position, little effort was made at trial to satisfy Defendant's burden. Defendant apparently took the strategic position that an all or nothing approach was all it could afford. Defendant rested for the most part on certain legal defenses that it believes may ultimately undermine the Court's judgment and the Plaintiff's right to recovery in the case. Defendant did not introduce any substantial evidence of its production costs, its promotion and marketing costs, its hard costs, or even its taxes incurred on the sales of the infringing products. In effect, on the damages question Defendant defaulted.

The Court would, therefore, be in compliance with the statute by awarding the full amount of lost profit damages requested by Plaintiff. The Court must also remember, however, that the statute "vests considerable discretion in the district court. Guided by the principles of equity, the court may award the defendant's profits. Additional extraordinary relief such as treble damages and attorney's fees are available under the statute if the district court believes that such an assessment would be just. *The statute also provides for the adjustment of any profits award if it is inadequate or excessive. This remedial accommodation clearly envisions the exercise of the trial judge's discretion.*" *Burger King,* 710 F.2d at 1495 (emphasis added). The Court's discretion in this regard is extensive precisely because "an award fashioned pursuant to the Lanham Act . . . confers upon district judges wide discretion in

determining a just amount of recovery for trademark infringement." *Ramada Inns, Inc. v. Gadsden Motel Co.,* 804 F.2d 1562, 1564-65 (11th Cir. 1986) (quoting *Holiday Inns, Inc. v. Alberding,* 683 F.2d 931 (5th Cir. 1982)).

In exercising that discretion here, sitting as we are as a Court of equity enforcing a statutory remedy, we agree with the persuasive analysis of a sister court in this circuit that:

> the Court does not accept the argument that [plaintiff] is entitled to recover the entirety of Defendants' profits since the inception of the competing enterprise. Even taking the allegations of the Complaint as true, such an award would result in an extraordinary windfall to the Company, in contravention of the Lanham Act's mandate that any monetary award "constitute compensation and not a penalty." 15 U.S.C. § 1117(a). While "exactness is not required[,]" . . . calculation of an award under the Act should not produce such a gross disconnect between harm and recovery.

*Keg Technologies, Inc. v. Laimer,* 436 F. Supp. 2d 1364, 1373 (N.D. Ga. 2006). As a result, in *Keg* the Court awarded lost profits for only a limited period of time that "adequately compensate[d] Plaintiffs for the Lanham Act violations identified in their pleading." *Id.* at 1374.

In this case, we conclude that our equitable discretion requires us to complete, at least in limited part, the lost profits equation that Defendant chose not to. We know that an award of $5 million in profits would not accurately reflect the actual amount of profits generated by this infringing product. We know, for instance, that a material percentage of the sales generated by Defendant's "Mystique" shoes were taxed by the United States government. We know that Defendant incurred some amount per shoe for the manufacturing cost, as well as certain amounts for hard costs and promotion

expenses. Therefore, a Court sitting in equity, even if lawfully entitled to do so, should not award a lost profits award that it knows has to be wrong.

Under these circumstances, the maximum profit that Defendant could have received from the sales of these shoes, assuming a certain percentage for taxes and costs, could not have exceeded a 50% margin. That would represent a considerable profit for each infringing shoe sold and the most that could be expected in this particular shoe market. Higher-end shoes certainly may derive an even greater profit margin, but given the volume of sales in this record for these shoes, pricing below $20 per pair, it is not a stretch to conclude that the profit margin on these shoes is far lower. The Court must, therefore, impose an equitable reduction of 50% from the gross sales calculations in the record to better reflect an award that is far closer to the actual amount of lost profit damages that resulted from these infringing products.

It is certainly possible that Defendant's profit margin was even less than 50%. But at some point Defendant's failure to satisfy its burden of production and proof must have consequences. If Defendant is not willing to provide that evidence in the record, despite having every opportunity to do so, then the Court will not do so sua sponte any further than it already has. On the other hand, a court sitting in equity should not knowingly award a party a windfall in damages. *Id.* at 1373. An award for the full amount of lost profit damages requested at trial would in fact represent a windfall recovery. An adjustment is thus required to prevent an unduly excessive award from being imposed under section 1117. *Burger King,* 710 F.2d at 1495.

Accordingly, the maximum lost profit award that can be imposed in this case is $2,950,000. As it is, that amount is still likely high. But again the record fully supports it given Defendant's failure to meet its burden under section 1117. The Court will, therefore, enter judgment for that amount.

For that reason, the Court will also exercise its discretion not to award attorneys' fees in the case. A recovery, assuming that it proves to be collectable, of $2,950,000 will more than satisfy the opportunity and litigation costs incurred by Plaintiff due to the infringing activity in this case. The Court does not find that there is sufficient evidence of bad faith and fraud in this record necessary to deem this an exceptional case under 15 U.S.C. § 1117. *See Victoria's Cyber Secret Ltd. Ptnshp. v. V Secret Catalogue, Inc.,* 161 F. Supp. 2d 1339, 1356 (S.D. Fla. 2001) ("The Eleventh Circuit has defined an exceptional case as a case that can be characterized as malicious, fraudulent, deliberate and willful . . . or a case where there is 'evidence of fraud or bad faith'") (quoting *Dieter v. B & H Indus. of S.W. Fla., Inc.,* 880 F.2d 322, 329 (11th Cir. 1989)).

Accordingly, the Court concludes that Plaintiff is not entitled to an award of attorneys' fees. Plaintiff is, however, certainly entitled to its taxable costs under 28 U.S.C. § 1920. A separate motion seeking an award for such costs should be filed following this Judgment.

### III.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Judgment is entered in favor of Plaintiff Mystique, Inc., and against Defendant 138 International, Inc., as to Counts I, II, III, IV, V and VI of the Complaint.

2. Judgment is entered in favor of Counter-Defendant Mystique, Inc., and against Counter-Plaintiff 138 International, Inc., as to Counts I, II, III, IV, V, VI, VIII, and IX of the Counterclaim.

3. Plaintiff Mystique, Inc. shall recover TWO MILLION NINE HUNDRED FIFTY THOUSAND DOLLARS ($2,950,000.00) from Defendant 138 International, Inc., for which sum let execution issue.

4. Defendant's federal trademark registration for "Mystique" (U.S. Reg. No. 2,609,745 dated August 20, 2002) is hereby cancelled pursuant to 15 U.S.C. § 1064. Pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, the Court Orders the Director of the United States Trademark Office to cancel U.S. Reg. No. 2,609,745 and to rectify the register with respect to such registration.

5. A permanent injunction is entered enjoining and restraining Defendant 138 International, Inc. and/or its affiliates, successors, officers, agents, services and other employees from using in commerce or in connection with any goods or services the MYSTIQUE Mark, or any mark, name or design that creates a likelihood of confusion with the MYSTIQUE Mark and engaging in any other acts of unfair competition as against Plaintiff Mystique, Inc.

6. The Court reserves jurisdiction to enforce this Final Judgment and enter any other Orders or Judgments contemplated herein.

7. This case is now CLOSED.

**DONE AND ORDERED** in Chambers, Miami, Florida, this 30th day of July, 2009.

_____
EDWIN G. TORRES
United States Magistrate Judge